IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| CRAIG E. MENDENHALL | § | |
| v. | § | CIVIL ACTION NO. 5:07cv44 |
| WARDEN JOSEPH WILSON, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Craig Mendenhall, proceeding *pro se*, filed this lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Mendenhall complained of incidents following a transfer from the Clements Unit to the Telford Unit. He says that when he arrived at Telford, Warden Wilson threatened him; the next day, he was taken to a cell other than his assigned cell and placed inside by an unknown officer, and was sexually assaulted by the inmate in that cell; he was then removed from that cell and placed in a "holdover cage," where a lieutenant laughed at him when Mendenhall tried to tell him about the assault; and when he was sent back to the Clements Unit a week and a half later, he was deprived of a considerable amount of property, including keep-on-person medications.

Mendenhall sued five defendants, including Senior Warden Hudson, Assistant Warden Wilson, and property officer Nita Burgess, as well as two unknown defendants, the correctional officer who allegedly put him in the cell where the assault took place, and the lieutenant who allegedly laughed at him when he tried to report it. The Magistrate Judge ordered the Defendants to answer, and the

1

named defendants have answered and filed a motion for summary judgment. Mendenhall has filed a response to this motion.

After review of the pleadings and the competent summary judgment evidence, the Magistrate Judge issued a Report on February 19, 2010, recommending that the motion for summary judgment be granted and that Mendenhall's claims against the named defendants be dismissed with prejudice. The Magistrate Judge also recommended that the claims against the unknown defendants be dismissed without prejudice, with the statute of limitations tolled for a period of 120 days following the entry of final judgment. Mendenhall filed objections to the Report on March 8, 2010.

In his objections, Mendenhall says first that it is undisputed that prior to his arrival at the Telford Unit, he had be sent to the University of Texas Medical Branch Hospital in Galveston, and that when he arrived at Telford, he was in possession of all of his medication. He states that the Magistrate Judge focused on a "false premise" that he was required to "pick and choose" what property to take with him upon his return to the Clements Unit, saying that he arrived at Telford with one yellow chain bag containing legal property, and one red chain bag containing personal property, including his medications. He says that "common sense dictates" that he should leave the Telford Unit with exactly the property with which he arrived.

As the Magistrate Judge said, the summary judgment evidence shows that when an inmate transfers to another unit, he can take one state-issued mesh bag, and selects the property which he carries and the items to be shipped later. In this case, Mendenhall admits that he refused even to sign the inventory form when the officers inventoried his property the day before he left. Mendenhall's assertion that the Magistrate Judge was focusing on a "false premise" is without merit.

Next, Mendenhall challenges the Magistrate Judge's conclusion that he did not show any harm as a result of the temporary deprivation of the medications. He says that he did suffer cognizable harm in that "his heart condition has deteriorated and now he is in the life's end stage of congestive heart failure." He likens the temporary deprivation of the medication to "water boarding" and "torture."

2

As the Magistrate Judge observed, the medical records show that Mendenhall was without his medications for only a brief period of time. He received two nitroglycerin tablets at the Beto Unit on the morning of November 9, the day after he left the Telford Unit, and he had another heart medication, digoxin, in his possession when he left the Beto Unit. Some eight hours later, at the Huntsville Unit, Mendenhall was given another six nitroglycerin tablets. Mendenhall has failed to show that the fact that he is now in end-stage congestive heart failure was the result of this brief deprivation of medication in 2006. The Magistrate Judge properly concluded that while this deprivation "cannot be condoned," it nonetheless failed to set out a constitutionally cognizable claim. Mendenhall's objections on this ground are without merit.

Third, Mendenhall complains that the Magistrate Judge concluded that the temporary deprivation of his legal work did not deprive him of access to court. He says that he suffered "actual injury" in the fact that he could not adequately respond to a magistrate judge's report entered in a habeas corpus proceeding which he was pursuing in the Northern District of Texas. Mendenhall contends that although he made the Northern District aware of what had happened, his subsequent pleadings and objections were rejected because they were made outside of the ten-day limit. He says that he had a valid habeas corpus claim, raising an *ex post facto* challenge, and so the harm which came to him was "beyond imagination."

The habeas corpus petition to which Mendenhall refers is styled Mendenhall v. Dretke, civil action no. 2:03cv440 (N.D.Tex.). The docket sheet in that case shows that it was dismissed on November 21, 2006, and Mendenhall's objections to the Report were filed the next day, November 22. Mendenhall states in his objections that his copy of the Report had been taken and that he had been denied access to his property. On November 29, 2006, the district court entered an order saying that Mendenhall's objections had been considered and determined to be without merit; the order says nothing about rejecting the pleadings because they were filed late. Mendenhall has not shown that had he filed these objections sooner, the district court may have ruled on them differently.

3

In addition, as the Magistrate Judge stated, that habeas corpus proceeding made no mention of an *ex post facto* claim. Instead, it challenged a disciplinary case, and was dismissed in part on the merits and in part for failure to exhaust administrative remedies. While Mendenhall did file a separate habeas corpus petition raising *ex post facto* issues, this other petition was filed in 2008 and thus could not have been the one in which the magistrate judge's Report was confiscated in 2006. Mendenhall has failed to show that he suffered constitutionally cognizable harm as a result of the temporary deprivation of his legal documents and his objection on this point is without merit.

Turning to Warden Wilson, Mendenhall says that the "threats or veiled threats" made by Wilson on the day before the alleged sexual assault "would reflect the Defendant's culpable *mens rea* to carry out a scheme in having plaintiff harmed and damaged." He says that he should be accorded "full discovery" regarding this claim, saying that if the Court would given him "just a fraction of latitude," he may be able to tie Wilson into a "calculated scheme to injure him." Mendenhall says that Wilson should not be entitled to qualified immunity until he has had "full opportunity for discovery."

The Fifth Circuit has held that prisoners cannot raise general claims and then make "a blind search of prison records to see if anything can be found." *See* Whittington v. Lynaugh, 842 F.2d 818, 820 (5th Cir. 1988). Mendenhall fails to show what information he could possibly learn were he accorded additional discovery beyond that which he has already received. The TDCJ records, which were provided to Mendenhall in discovery, show that Mendenhall was never assigned to the cell in which he says that he was assaulted, and that he could not have been assigned to that cell because the occupant was a black inmate and the Unit Classification Committee, of which Wilson was a member, elected to keep Mendenhall's restrictions intact, including his restriction against being housed with black inmates. Mendenhall asserts that an "unknown correctional officer" took him to this cell, but offers nothing beyond speculation to show that Wilson knew anything about the alleged incident, much less that Wilson approved such a violation of the classification restrictions which he himself had imposed. His objections regarding Warden Wilson are without merit.

4

Finally, Mendenhall complains about the recommendation to dismiss his claims against the unknown defendants without prejudice. He says that he has "diligently made every effort to discover the identities" of the persons involved, and acknowledges that the Defendants' counsel has also been unable to identify the individuals. He states that he "does not possess any clairvoyance or the ability to gaze into a crystal ball" in order to ascertain this information.

Mendenhall insists that he has not been given "meaningful discovery" to enable him to ascertain the identities of these individuals, and that although he requested a line-up of every officer who worked at the Telford Unit on that date, his request was denied. However, the record shows that Mendenhall has been provided with discovery, including the employee shift rosters; in addition, counsel for the Defendants made efforts to determine the identities of the persons allegedly involved. Mendenhall did not file a grievance while at the Telford Unit, said nothing to medical personnel at the Telford Unit about a sexual assault despite seeing them on a daily basis after the alleged incident occurred, and refused to cooperate with the attempt to investigate the matter which was begun at the Clements Unit by Captain Clark. Consequently, no investigative reports were done at or immediately after the alleged incidents which could have identified the participants.[1] Mendenhall's objection on this point is without merit.

The Court has conducted a careful *de novo* review of the pleadings in this cause, the summary judgment evidence, the Report of the Magistrate Judge, and the Plaintiff's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and that the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

---

[1] The TDCJ Office of the Inspector General did conduct an investigation, which was commenced some three weeks after the alleged incident had occurred, after Mendenhall returned to the Clements Unit. This investigation concluded that Mendenhall's claims could not be substantiated.

ORDERED that the motion for summary judgment filed by the Defendants Warden Hudson, Warden Wilson, and Nita Burgess (docket no. 66) is hereby GRANTED and that the Plaintiff's claims against these Defendants are hereby DISMISSED with prejudice. It is further

ORDERED that the Plaintiff's claims against the unknown defendants be and hereby are DISMISSED without prejudice, with the statute of limitations suspended for a period of 120 days following the date of entry of final judgment in this case. Finally, it is

ORDERED that any and all motions which may be pending in this action, specifically including but not limited to the Plaintiff's motion for partial summary judgment against Nita Burgess (docket no. 62) are hereby DENIED.

**SIGNED this 12th day of March, 2010.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE